IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| v. | ) ) ) | COMPLAINT |
| | ) | JURY TRIAL DEMAND |
| MAGNETI MARELLI OF TENNESSEE, LLC | ) ) | |
| Defendant. | ) ) ) | |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices based on sex and to provide appropriate relief to Rebecca Crouch, Christy Parson, and a class of female employees who were adversely affected by such practices. As alleged with greater particularity below, Plaintiff Equal Employment Opportunity Commission, (the Commission), alleges Defendant, Magneti Marelli of Tennessee, LLC (Defendant or Defendant Employer), subjected Rebecca Crouch, Christy Parson, and a class of female assembly line workers to sexual harassment.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to §706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. §2000e-5(f)(1) and (3) and 42 U.S.C. §2000e-3(a), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for Middle District of Tennessee, Columbia Division.

## PARTIES

3. Plaintiff, Equal Employment Opportunity Commission (Commission), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by §706(f)(1) and (3) of Title VII, 42 U.S.C. §2000e-5(f)(1) and (3) and 42 U.S.C. §2000e-3(a).

4. At all relevant times, Defendant Employer has continuously been a foreign corporation doing business in the State of Tennessee and the City of Pulaski and has continuously had at least 15 employees.

5. At all relevant times, Defendant Employer has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## ADMINISTRATIVE PROCEDURES

6. More than thirty days prior to the institution of this lawsuit, Rebecca Crouch filed a charge of discrimination with the Commission against Defendant Employer, alleging Defendant violated Title VII.

7. On August 15, 2018, the Commission issued to Defendant Employer a Letter of Determination finding reasonable cause to believe Defendant violated Title VII, and invited Defendant Employer to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and to provide appropriate relief.

8. The Commission engaged in communications with Defendant Employer to provide Defendant with the opportunity to remedy the discriminatory practices described in the Letter of Determination.

9. The Commission was unable to secure from Defendant Employer a conciliation agreement acceptable to the Commission.

10. On September 20, 2018, the Commission issued Defendant Employer a Notice of Failure of Conciliation.

11. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF SEXUAL HARASSMENT CLAIMS

12. Since at least December 2015, Defendant Employer has engaged in unlawful employment practices at its Pulaski, Tennessee location in violation of §703(a) of Title VII, 42 U.S.C. § 2000e-2(a).

13. The unlawful employment practices involved subjecting Rebecca Crouch, a former assembly line worker, to unwelcome sexual harassment.

   a. On or around May 2015, Staffmark, a staffing agency, placed Rebecca Crouch (Crouch), as a temporary employee at Defendant Employer's plant.

   b. After approximately 45 days, on or around June 2015, Defendant Employer hired Crouch as an assembly worker in a permanent position.

   c. Around December 2015, Defendant Employer placed Jamil Degraffenreid (Degraffenreid) as the supervisor of the assembly line where Crouch worked as an assembler.

   d. Degraffenreid previously worked for Defendant Employer as a team lead in its North Carolina plant from around November 2012 to November 2015.

   e. As line assembly supervisor at the plant in Pulaski, Tennessee, Degraffenreid supervised the line where Crouch and other employees worked.

f. Degraffenreid promoted employees from assembler to team lead.

g. Degraffenreid could also terminate or recommend the termination of employees who worked on the assembly line.

h. Shortly after Degraffenreid arrived as an assembly supervisor at the Pulaski plant, Degraffenreid began harassing Crouch and other females on the assembly line.

i. Degraffenreid asked Crouch and other female employees to refer to him as "Big Daddy."

j. Degraffenreid began touching and massaging Crouch's shoulders on a regular basis.

k. Although Crouch asked Degraffenreid not to touch her, Degraffenreid said he was sorry, but he continued to touch Crouch. The touching and massaging never ceased.

l. Without conducting any interviews, Degraffenreid appointed a team lead for the assembly line who lacked any experience with the lights.

m. When Crouch questioned him regarding the appointment, Degraffenreid told Crouch he was the supervisor and he decided who would become the team lead.

n. Degraffenreid also told Crouch, "sometimes you have to do more than what is expected to get ahead in life," and winked at her. Crouch believed Degraffenreid made the statement because Crouch rebuffed his advances, causing Degraffenreid not to consider Crouch for the team lead position.

o. Crouch saw Degraffenreid touch other females in the workplace, and walk the assembly line daily to ask every female, "what's my name?"

p. Degraffenreid told the female employees his name was "Big Daddy."

4

q. Although Defendant Employer had previously issued Degraffenreid a warning for telling employees to call him "Big Daddy," Degraffenreid continued to ask female employees to call him "Big Daddy."

r. Crouch heard Degraffenreid speak in the workplace about his sexual relationship with his wife.

s. Crouch heard Degraffenreid say his wife thought his penis was so "huge and big."

t. Crouch heard Degraffenreid converse in the workplace about how he wanted his wife to give him "blow jobs" more often.

u. The conversations offended Crouch and other female employees.

v. Defendant Employer maintains a policy against sexual harassment in the workplace.

w. The policy requires that employees promptly report the harassment to their supervisor, Human Resources or other management.

x. Crouch went to Human Resources and complained about Degraffenreid's harassment in the workplace.

y. Crouch complained to Human Resources about the touching and Degraffenreid's constant conversations about sex while working on the line.

z. Human Resources took a few notes, and said it would speak with Degraffenreid.

aa. After Crouch complained to Human Resources about Degraffenreid, Crouch did not notice any change in Degraffenreid's behavior.

bb. Degraffenreid commented he liked the way Crouch handled things in the workplace, and asked whether she handled stuff like that in the bedroom.

5

cc. Crouch complained about Degraffenreid a second time around March 2016, after Degraffenreid asked whether Crouch handled stuff like that in the bedroom.

dd. After Crouch complained to Defendant Employer's Human Resources Office, no one ever contacted Crouch to discuss her allegations against Degraffenreid.

ee. The sexual harassment experienced by Crouch was not welcomed.

ff. The sexual harassment experienced by Crouch unreasonably interfered with the performance of her work.

gg. Defendant Employer failed to take any corrective action against Degraffenreid after Crouch complained.

14. The unlawful employment practices also involved subjecting Christy Parson (Parson), a former assembly line worker, and other females to unwelcome sexual harassment.

a. Christy Parson worked on the assembly line from February 2016 until around May 2016.

b. Parson observed that Degraffenreid sexually harassed her and other female employees in the workplace on a daily basis.

c. Degraffenreid massaged Parson's neck, and rubbed and caressed Parson's back constantly. He placed his hand on Parson's leg.

d. Degraffenreid often made comments about Parson's "butt," at least eight to nine times per day. Degraffenreid said Parson's "butt" looked good in those pants.

e. Degraffenreid asked Parson at least 15 times whether Parson thought it would be good to have sex "with your supervisor."

f. When Degraffenreid asked Parson the question, he looked at her in the eyes and licked his lips.

g. When Degraffenreid learned Parson was in an interracial relationship,

6

Degraffenreid asked Parson whether she liked "black meat," and said more than 25 times that he knew what she wanted.

  i. Degraffenreid asked Parson whether her cousin, Jessica Green (Green), had sexual intercourse with black men.

  j. Degraffenreid commented that Green had "big boobs."

  k. Degraffenreid said that he bet Green could "suck dick."

  l. Degraffenreid told Parson to ask Green to have a party and invite him.

  m. Degraffenreid said one female employee was so ugly, he would have to "do her from behind."

  n. Degraffenreid often talked about other female employees' "butts."

  o. Degraffenreid often sang songs in the workplace such as "shake your ass," "put the pussy in the face," and "pop that pussy."

  p. Degraffenreid asked Parson to party with him.

  q. Degraffenreid's conduct was unwelcome.

  r. Degraffenreid subjected other females to unwelcome sexual harassment on a daily basis.

  s. Degraffenreid asked the female employees to go out on dates with him or call him.

  t. Degraffenreid asked other females to have sex with him.

  u. Degraffenreid gave a team lead position to an employee who promised to have sex with him.

  v. Degraffenreid threatened employees by telling them he would discharge them if they went to Human Resources.

  w. The unwelcome sexual harassment was collectively sufficiently severe or

7

Case 1:18-cv-00074   Document 1   Filed 09/28/18   Page 7 of 10 PageID #: 19

pervasive to alter the terms and conditions of the claimants' employment by creating a sexually hostile work environment.

      x.    Defendant Employer had previous issues with sexual harassment in the workplace by Degraffenreid.

      y.    Other female employees had complained to Human Resources.

      z.    Defendant Employer failed to take appropriate remedial measures to protect the female employees from sexual harassment.

      aa.    Around May 13, 2016, Amanda Huckaba complained that Degraffenreid threatened to take his belt and whip her.

      bb.    Defendant Employer commenced an investigation of Degraffenreid.

      cc.    Defendant Employer had previously counseled Degraffenreid about inappropriate jokes.

      dd.    Despite the counseling, Degraffenreid had continued his behavior.

      ee.    After receipt of Amanda Huckaba's complaint, Defendant Employer offered to Degraffenreid two options, resign with a severance package or return to the North Carolina facility as an operator. Degraffenreid chose to resign with a severance package.

15. The effect of the practices complained of in Paragraphs 13-14 above has been to deprive Crouch, Parson, and other female assembly line workers of equal employment opportunities, and to otherwise adversely affect their employment because of their sex, female.

16. The unlawful employment practices complained of in Paragraphs 13-14 above were intentional.

17. The unlawful employment practices complained of in Paragraphs 13-14 were done with malice or with reckless indifference to the federally protected rights of Crouch, Parson, and other female assembly line workers.

18. The unlawful employment practices complained of in Paragraphs 13 and 14 were done with malice or with reckless indifference to the federally protected rights of the claimants.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in harassment and any other employment practice which discriminates based on sex, female.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for women and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make whole Rebecca Crouch, Christy Parson and a class of female employees by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above in amounts to be determined at trial.

D. Order Defendant to make whole Rebecca Crouch, Christy Parson and a class of female employees by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation in amounts to be determined at trial.

E. Order Defendant to pay Rebecca Crouch, Christy Parson and a class of female employees punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the Commission its costs of this action.

**JURY TRIAL DEMAND**

The Commission requests a jury trial on all questions of fact raised by its Complaint.

        Respectfully submitted,

        JAMES L. LEE
        Acting General Counsel

        GWENDOLYN YOUNG REAMS
        Associate General Counsel

        s/ Faye A. Williams
        FAYE A. WILLIAMS
        Regional Attorney
        TN Bar No. 11730

        s/ Jason P. Bailey
        JASON P. BAILEY
        Trial Attorney
        AR Bar No. 2015228
        jason.bailey@eeoc.gov

        EQUAL EMPLOYMENT
        OPPORTUNITY COMMISSION
        1407 Union Avenue, Suite 901
        Memphis, TN  38104
        Telephone: (901) 544-0158

        s/ Mark Chen
        MARK CHEN
        Trial Attorney
        TN Bar No. 014268
        mark.chen@eeoc.gov

        EQUAL EMPLOYMENT
        OPPORTUNITY COMMISSION
        220 Athens Way, Suite 350
        Nashville, TN  37228
        Telephone: (615) 736-5784