**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:18-cv-00074 |
| MAGNETI MARELLI OF TENNESSEE, LLC, | ) ) ) ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

This case began with an Equal Employment Opportunity Commission ("Commission" or "EEOC") charge that Jamil Degraffenreid, a production supervisor at a Magneti Marelli of Tennessee LLC ("Magneti") manufacturing plant, sexually harassed a class of female employees—Rebecca Crouch, Ariana Baker, Amanda Huckaba Campbell, and Christy Parson (collectively "claimants")—working on assembly lines that he oversaw. Pending before the Court are the parties' cross-motions for summary judgment. The EEOC has filed a Motion for Partial Summary Judgment on Magneti's defense that the EEOC failed to meet its statutory duty of conciliation. (Doc. No. 26). Defendant has filed a Motion for Summary Judgment for dismissal. (Doc. No. 29). Both motions have been fully briefed by the parties. (Doc. No. 27, 30, 35, 37, 43, 46, 49). For the following reasons, Magneti's Motion for Summary Judgment will be denied, and the EEOC's Motion for Partial Summary Judgment will be granted.

## I. FACTS

A.    <u>Harassment</u>[1]

The EEOC presents evidence replete with examples of Degraffenreid's behavior that the EEOC claims made the assembly lines under his supervision a difficult environment to work. He constantly told female employees to call him "Big Daddy." (Doc. No. 31 ¶ 32; Baker Dep. at 24; Campbell Dep. at 21, 27; Crouch Dep. at 31–33, 97; Parson Dep. at 37–38; Wallace Dep. at 27). Frequently, he "massaged" women's shoulders and down their backs. (Baker Dep. at 18–19; Crouch Dep. at 28; Parson Dep. at 60; <u>see</u> Doc. No. 31 ¶ 32). About a dozen times when "massaging" Parson, Degraffenreid whispered "you know you like that" into her ear. (Parson Dep. at 60). He loudly sang sexually explicit song lyrics—and apparently only explicit lyrics— referencing female anatomy and directed at specific female employees. (<u>Id.</u> at 38, 97; Baker Dep. at 23; Crouch Dep. at 25–27, 97; Wallace Dep. at 18).

Generally, Degraffenreid's comments about female employees' appearance made them uncomfortable to bend or stand at work. (Parson Dep. at 66). Parsons recalled that Degraffenreid commented on her butt 8 or 9 times each day (<u>id.</u>), asked her more than 50 times if she thought that it was ok for a supervisor to sleep with his employees (<u>id.</u> at 26–28), and told her more than 25 times that he "knew what she wanted," with a sexual implication (<u>id.</u> at 67–68). Into Campbell's ear Degraffenreid once whispered that he was going to whip her with his belt. (Campbell Dep. at 20–21, 28; <u>see</u> Doc. No. 31 ¶ 32). He smelled Baker twice a day, and occasionally ran his fingers through her hair. (Baker Dep. at 16–19). Once, Degraffenreid used his finger to draw a circle in

---

[1] Due to disputes of material facts, this section relies on the record and depositions, in addition to the undisputed facts identified in Doc. No. 36. The depositions can be found on the docket as attachments to Doc. No. 35 and will be cited to by the deponent's name for ease of reference.

the palm of Baker's hand. When she didn't know what that meant, he indicated it symbolized that he wanted to sleep with her. (Baker Dep. at 17, 22). This recitation omits some even more egregious comments and behavior alleged against Degraffenreid. (See, e.g., Parson Dep. at 29–31, 36, 40, 67, 69; Wallace Dep. at 20–22, 33–35).

The environment was so toxic that women shared amongst each other what Degraffenreid had said to them or what they had heard him say to another. (Crouch Dep. at 34, 38–39, 71; Parson Dep. at 36; Campbell Dep. at 41–42; Wallace Dep. at 12, 20–21, 62–63). The parties dispute whether Degraffenreid's alleged harassment impacted the claimants' ability to perform their jobs. (Doc. No. 36 ¶¶ 22, 24, 27, 30). Crouch twice reported Degraffenreid's behavior to human resources, although she abruptly resigned several days after her second report in March 2016 when Degraffenreid remarked on how she handled assembly parts and asked "do [you] handle things like that in the bedroom?" (Crouch Dep. at 36, 44–48). Baker reported Degraffenreid's hand symbol and was terminated two days later because Degraffenreid "said that [she] no longer needed to work there."[2] (Baker Dep. at 10, 27–31, 50–51). Some employees did not file formal reports with management for fear of suffering backlash. (Parson Dep. 32, 43–44). Others took their complaints to Jessica Wallace, a "team lead" employee on the assembly line, who relayed them to human resources, but Degraffenreid's behavior continued, possibly reflecting that he was not disciplined. (Wallace Dep. at 29–30, 44–45).

B.    Magneti's Policy and Degraffenreid's Role

Magneti's employee policy forbids sexual harassment. A copy of the sexual harassment policy was in the employee handbook given to each employee during new hire orientation, and

---

[2] At this same time, Baker took two days off from work to tend to her daughter's medical needs, and Degraffenreid approved this leave. (Baker Dep. at 28–30, 50–51).

each employee had to sign an acknowledgement of receiving the handbook. (Doc. No. 36 ¶ 3; Hodges Dep. at 34). However, the parties dispute whether new hire training occurred regularly. (Doc. No. 36 ¶ 6). Several claimants reported not having attended such a training, and, according to Degraffenreid, the sexual harassment training consisted only of reading and signing a form that "explain[ed] about sexual harassment" with no discussion. (Id.; Degraffenreid Dep. at 29).

Degraffenreid affirmed that his manager, Elvin Powell, gave him the "responsibility" to hire and promote employees, but "[he] had to run it through" Powell. (Degraffenreid Dep. at 22–23, 28). While he consulted with Powell when he promoted employees to the "team lead" position, there "was really no process" for promoting workers, he just let Powell know that the employee was ready for the promotion. (Id. at 23–26; see Wallace Dep. at 25, 54). He promoted Wallace to team lead, and she testified that while there was "supposed" to be a process for it, she did not have to go through any process or interview to obtain the promotion. (Wallace Dep. at 54). Wallace also suggested that Degraffenreid effectively had the authority to fire someone, because if he "said this one is done, that one was done, you wouldn't see them the next day." (Id. at 65–66).

On the other hand, members of Magneti management testified that a production supervisor like Degraffenreid could not hire and fire employees. According to Hannah McMahon, a human resources coordinator, line supervisors "do not have the authority to hire, fire, promote, transfer, or make any other tangible employment decisions over line employees," and can only "suggest tangible employment actions, but their recommendations have no binding weight." (McMahon Decl. at 1). Another employee remarked that, although Degraffenreid could not hire and fire someone, he could make that request. (Andrea Corino Dep. at 44).

C.    Conciliation Efforts

On December 30, 2016, Crouch filed an EEOC charge over Degraffenreid's conduct. (Doc. No. 27-1 at 5–6). The Commission notified Magneti that Crouch had charged sexual harassment and discrimination based on sex (Id. at 7–8) and later, on August 15, 2018, concluded that there was reasonable cause to believe that Degraffenreid sexually harassed Crouch and a class of female employees assigned to his assembly lines (Id. at 9–10). The EEOC notified Magneti that:

> Evidence obtained during the investigation establishe[d] the supervisor subjected Charging Party, and a class of female employees to a sexually hostile work environment. The harassment consisted of requests for sexual favors, and other verbal or physical conduct of a sexual nature and the supervisor's conduct affected their employment and created a hostile, or offensive work environment. The evidence further revealed Respondent's supervisor offered promotions to female employees in exchange for sex. Evidence indicate[d] that Respondent's supervisor threatened employees with termination if they made a complaint and discharged employees who rejected his advances.

(Id.). The letter plainly identified Crouch as the "Charging Party." (Id.).

Conciliation efforts began on August 15, 2018. (Id. at 10–11). The EEOC issued a notice of conciliation failure on September 20, 2018 and followed with this suit on September 28, 2018. (Id. at 12; Doc. No. 1).

## II.  LEGAL STANDARD

The standard for reviewing motions for summary judgment provides that it is appropriate only where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A summary judgment motion may be made against a claim or an individual defense. Id. In reviewing a motion, the Court must review all the evidence, facts, and inferences in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

"The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003). After this initial burden is satisfied, the nonmoving party has the burden of showing that a "rational trier of fact [could] find for the non-moving party [or] that there is a 'genuine issue for trial.'" Matsushita, 475 U.S. at 587. The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment. Rodgers, 344 F.3d at 595. Rather, there must be evidence on which a trier of fact could reasonably find for the non-moving party. Id.; Hill v. White, 190 F.3d 427, 430 (6th Cir. 1999).

## III. ANALYSIS

In its motion for summary judgment, Magneti argues that the EEOC has not established that the claimants were subject to sexual harassment that created a hostile work environment because Degraffenreid's conduct was insufficiently severe or pervasive. (See Doc. No. 30 at 2). It also argues that it cannot be liable for his conduct because Degraffenreid was not a "supervisor," so it was not negligent. (See id.). The Commission's partial motion for summary judgment is based on Magneti's defense that the Commission did not meet its statutory requirement of conciliation before bringing this suit. (Doc. No. 24).

### A.    Magneti's Motion for Summary Judgment

Sex-based discrimination is a Title VII violation when it creates a hostile or abusive work environment. 42 U.S.C. § 2000e–2(a)(1); Williams v. Gen. Motors Corp., 187 F.3d 553, 560 (6th Cir. 1999). A *prima facie* case requires the plaintiff to show that the claimant (1) "is a member of a protected class (female); (2) she was subjected to harassment, either through words or actions, based on sex; (3) the harassment had the effect of unreasonably interfering with her work

performance and creating an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer." Grace v. USCAR, 521 F.3d 655, 677 (6th Cir. 2008). The first element is satisfied because the claimants are members of a protected class as women. Id.

    1.  Sex-based harassment

Viewing the facts in the light most favorable to the Commission, a reasonable jury could find that the claimants were subject to words or actions based on their sex. Harassment based on sex is satisfied by sex-specific words. See Gallagher v. C.H. Robinson Worldwide, Inc., 567 F.3d 263, 272 (6th Cir. 2009).

Magneti argues that Degraffenreid's behavior was not "sex-based" because asking to be called "Big Daddy," massaging employees' shoulders, threatening to whip Campbell, and singing explicit songs were not sexual.[3] (Doc. No. 43 at 4). Further, Magneti argues that these actions and comments were all said on the assembly line with members of both sexes present, so they were not directed only at women. (Id.). That some comments were said in mixed company does not prevent the Commission from meeting this element. In Gallagher, the Sixth Circuit held that conduct that was explicitly sexually and patently degrading of women, even when it was indiscriminately used in a manner that equally exposed men and women to the language, was harassment based on sex. 567 F.3d at 271–72. Degraffenreid's language and conduct was explicitly sexual and aimed at women, so they involved claimant's sex. See id.

The profane terms Degraffenreid sang involved female specific profanity, so his harassing behavior of singing sexually explicit song lyrics was sex-based. See Gallagher, 567 F.3d at 272 ("'sex specific' profanity is more degrading to women than men and is properly deemed 'based on

---

[3] That he made these remarks is not disputed. (Doc. No. 36 ¶ 32).

sex' for purposes of evaluating the severity and pervasiveness of the harassment"); (Crouch Dep. at 25–27, 97). The unwelcome shoulder massages were also sex-based because the record suggests that they were given only to women, and, viewed in the light most favorable to the EEOC, that shows that they had something to do with the claimants' gender. See Bowman v. Shawnee State Univ., 220 F.3d 456, 463–64 (6th Cir. 2000) (distinguishing "gender-specific" epithets that do create a hostile work environment, from the non-sexual conduct that have nothing "to do with [claimant's] gender"). When taking the facts in the light most favorable to the EEOC, a reasonable jury could conclude that Degraffenreid's conduct towards the claimants was based on their sex.

## 2. Severe or pervasive harassment

Harassment capable of creating a hostile work environment means that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993). This severe or pervasive test is both objective and subjective—the "conduct must constitute a hostile or abusive work environment both to the reasonable person and the actual victim." Grace, 521 F.3d at 678 (internal quotations omitted); see also Barrett v. Whirlpool Corp., 556 F.3d 502, 514 (6th Cir. 2009) (holding that "'severe or pervasive' is properly considered in the disjunctive"). It is judged on the totality of circumstances, Williams, 187 F.3d at 562, and the factors to consider include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance," Harris, 510 U.S. at 23.

Magneti argues that Degraffenreid's conduct, although vulgar, was isolated and not extreme enough to alter the conditions of employment and create a hostile work environment for

the claimants. (Doc. No. 30 at 12–14, 16). Specifically, it isolates the harassment experienced by each claimant to then argue that each only faced sporadic incidents of harassment, i.e. not severe or pervasive harassment. (Id. at 16–19). When considering the totality of the circumstances, however, courts do not focus on the discrete, individual incidents of alleged harassment, but "review the work environment as a whole" because "accumulated effects of" individual instances of sexual harassment against a given claimant may create a hostile work environment even if those individual instances in isolation might not. Williams, 187 F.3d at 563. Additionally, the assembly line environment and Degraffenreid's flagrant behavior gave his employees' a front row seat to his harassment individually and in the aggregate. The EEOC offers "basic evidence to show that they were individually aware of the harassment experienced by other" claimants. Berryman v. SuperValu Holdings, Inc., 669 F.3d 714, 719 (6th Cir. 2012). Based on the claimants' testimony that women on the assembly line were aware of Degraffenreid's conduct to others and that claimants saw his harassment towards each other, Baker, Campbell, Crouch, and Parson should not be viewed in isolation. Instead, the accumulated effects are properly reviewed in the aggregate. See id.; Williams, 187 F.3d at 563.

Courts have indicated that repeated sexually offensive comments can meet the mark of severe or pervasive harassment, and adding an instance of physical touch to repeated verbal sexual harassment makes it more severe. See Hawkins, 517 F.3d at 334 ("harassment involving an element of physical invasion is more severe than harassing comments alone"); Williams, 187 F.3d at 559, 563 (holding that repeated sexually offensive comments like "Hey, slut" and "I'm sick and tired of these [expletive] women" suggested a hostile work environment sufficient enough to survive summary judgment when also accompanied by one act of touching the plaintiff's neck); Parra v. City of White Plains, 48 F. Supp. 3d 542, 547, 552 (S.D.N.Y. 2014) (finding that plaintiff

had stated a hostile work environment claim because her supervisor instructing that she call him "Big Daddy" plus unwanted physical contact was severe or pervasive); Greenwood v. Delphi Auto. Sys., Inc., 257 F. Supp. 2d 1047, 1062 (S.D. Ohio 2003) (finding a genuine issue of material fact regarding whether conduct was severe or pervasive from unwelcome shoulder massages, an expressed desire to be in a sexual relationship with plaintiff, and other "sexually humiliating" conduct). That is the type of behavior alleged against Degraffenreid.

Degraffenreid made implicit and explicit sexually suggestive comments—asking a single employee more than 50 times if she thought it was ok for a supervisor to sleep with his employees, constantly requesting to be called "Big Daddy," repeatedly telling employees that he "knew what [they] wanted," and singing sexually suggestive song lyrics directed at women—and also made close physical contact—the "massages." The claimants recounted daily, seemingly never-ending, invidious behavior by Degraffenreid, showing that his harassment was "ongoing," "commonplace," and "continuing." Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321, 333 (6th Cir. 2008) (stating that allegations "that the harasser's sexual comments were ongoing, commonplace, and continuing was sufficient to survive summary judgment on the severe or pervasive test" (internal quotations omitted)). Considering the totality of these circumstances in the light most favorable to the Commission, there is a wealth of evidence from which a rational juror could conclude that Degraffenreid's conduct was severe or pervasive.

Although Title VII is not meant to enforce a workplace "civility code," see Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75 (1998), many of the cases relied on by Magneti are from two decades ago (see Doc. No. 30 at 14–20). There has been a sea change over the last quarter of a century in what is now acceptable workplace conduct and what is understood as unlawful harassment. See, e.g., Swyear v. Fare Foods Corp., 911 F.3d 874, 881 (7th Cir. 2018) (noting that

current application of the severe or pervasive standard "is a far cry from [the] hellish" standard as earlier cases recognized). Each claimant perceived at least parts of Degraffenreid's behavior as offensive. In the light most favorable to the EEOC, Degraffenreid's comments and conduct was objectively offensive sexual harassment. See Grace, 521 F.3d at 678. Again, there is material evidence for a jury to find that Degraffenreid's conduct was severe or pervasive, and summary judgment for Magneti is improper.

### 3. Employer liability

Regarding the fourth element, Magneti argues that Degraffenreid was not a "supervisor," but rather the claimants' "co-worker," so Magneti could only be liable if it was negligent, which it was not. (Doc. No. 30 at 22). The EEOC argues that Degraffenreid was a "supervisor" because he had delegated authority over employment decisions, and, further, Magneti was negligent because its anti-harassment policy was inadequate. (Doc. No. 35 at 22–24, 26).

Magneti's argument highlights the binary standards applicable to employer liability, where the standards are different depending on whether the harassment comes from a co-worker or supervisor. See Vance v. Ball State Univ., 570 U.S. 421, 427–28 (2013). There is a genuine dispute of material fact on whether Degraffenreid was a co-worker or supervisor. A "supervisor" under Title VII has been "empowered" by their employer to effect "tangible employment actions" against the claimant, id. at 424, 431, like "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits," Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998). Although members of Magneti's management stated that Degraffenreid's job description did not include the ability to hire, fire, or promote employees, an employee without explicit authority to

take these tangible employment actions may still be a supervisor if they do so as presented here. See Vance, 570 U.S. at 447.

In Equal Employment Opportunity Commission v. AutoZone, Inc., the Sixth Circuit concluded that a manager without authority to fire, demote, promote, or transfer an employee, but nonetheless had his recommendations for employment actions simply rubber-stamped, "'effectively delegated the power to take tangible employment actions to the employee on whose recommendation [the employer] relies'" and he could be a "supervisor." 692 F. App'x 280, 283 (6th Cir. 2017) (unpublished) (quoting Vance, 570 U.S. at 447) (holding that the manager only had persuasive input on employment actions and was not a "supervisor"). While Degraffenreid had to run promotion decisions by his manager, all that he needed to do to promote an employee was to tell his superior that it should be done. (Degraffenreid Dep. at 23–26, 28). This may be tantamount to a rubber stamp of Degraffenreid's promotional decision. See AutoZone, 692 F. App'x at 283. Other employees were told that Degraffenreid had the ability to fire employees at will. (See Baker Dep. at 50–51; Wallace Dep at 65–66). This all indicates that, even if Degraffenreid ostensibly did not have the ability to make tangible employment actions in his job description, he was "effectively delegated the power to" make those decisions. See Vance, 570 U.S. at 447; AutoZone, 692 F. App'x at 283. Taking the evidence in the light most favorable to the Commission, a rational jury could find that Degraffenreid was a "supervisor."

It appears that Degraffenreid may be a supervisor so Magneti may be liable unless it can establish what is commonly called the Faragher-Ellerth affirmative defense, by showing "(a) it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Gallagher, 567 F.3d at 275

(internal quotations omitted). An effective and enforced harassment policy generally shows that an employer has exercised reasonable care to prevent and correct any sexually harassing behavior, but there is a genuine dispute over whether Magneti's sexual harassment policy was effective and enforced. Id.

According to one Magneti employee, taking issues with a supervisor's malevolent conduct to human resources would be perilous. (Jade Moore Dep. at 40). Others say that education on the sexual harassment policy was in fact limited to employees being required to sign off that they had read the policy. (Degraffenreid Dep. at 29). A sexual harassment policy can hardly be effective if the extent of the training was that employees read the policy, without more, and if employees felt that reporting harassment "would get [them] fired." (Jade Moore Dep. at 40); see Gallagher, 567 F.3d at 275. Under the standard for summary judgment, Magneti cannot avail itself of the Faragher-Ellerth affirmative defense to vicarious liability for a supervisor's harassment because a jury could reasonably find from these facts that Magneti did not exercise reasonable care.

Because of the genuine issues of material fact regarding the elements of the hostile work environment claim, Magneti's motion for summary judgment is denied.

**B.    The EEOC's Partial Motion for Summary Judgment**

The EEOC moves for partial summary judgment on Magneti's defense of failure to conciliate, arguing that it attempted conciliation and met the statutory requirements so the defense cannot apply. (Doc. No. 24; see Doc. No. 7 at 9). Magneti argues that the EEOC did not meet its conciliation requirement because it asked the EEOC to provide the number of members, their identity, and the parameters of the class, but the EEOC declined to further specify the class during conciliation. (Doc. No. 49; Doc. No. 49-1 at 1–2).

An EEOC complaint begins when an employee brings a timely charge with the EEOC. If the EEOC finds reasonable cause to believe that an employee's discrimination charge is true, Title VII requires that it attempt conciliation of the charge with the employer before filing a lawsuit. Mach Mining, LLC v. EEOC, 575 U.S. 480, 486, 494 (2015). Conciliation allows the employer to voluntarily remedy the allegedly discriminatory practice. See 42 U.S.C. § 2000e–5(b) (stating that the Commission "shall endeavor to eliminate [an] alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion"). "Only if the Commission is 'unable to secure' an acceptable conciliation agreement" may it proceed with a lawsuit against the employer. See Mach Mining, 575 U.S. at 486 (quoting 42 U.S.C. § 2000e–5(b)).

Judicial review of the Commission's conciliation attempt is limited to taking a barebones look to assess compliance with the statutory obligation, without looking any further at the substantive details of conciliation. See Mach Mining, 575 U.S. at 489, 494. The EEOC's statutory conciliation obligation requires that it communicate information about "the alleged unlawful employment practice," describing "what the employer has done and which employees (or what class of employees) have suffered as a result." Id. at 488, 494 (internal quotations omitted).

The Court finds that there is no genuine dispute of material fact that the EEOC met its statutory conciliation duty. It notified Magneti that the charge was on behalf of Crouch and a class of female employees who were sexually harassed by Crouch's supervisor. See id. at 494. This class identification is akin to the charge on review in Mach Mining, as both involved one identified claimant with other unidentified but similarly situated class members. See id. at 484, 494 (reviewing a discrimination charge by an individual who alleged that she had not been hired because of her sex, and a class of women who had similarly applied for jobs); see also Arizona ex rel. Horne v. Geo Group, Inc., 816 F.3d 1189, 1200 (9th Cir. 2016) (holding that under Mach

<u>Mining</u> the EEOC does not need to identify each member of a class in conciliation). Given that judicial review of conciliation attempts is at a high level, this Court will not further scrutinize the identification of the class members. The EEOC engaged in conciliation discussions with Magneti, and, on a "barebones review," Magneti has not shown that the EEOC failed to undertake conciliation. <u>See</u> <u>Mach Mining</u>, 575 U.S. at 494–95. Accordingly, the Court will grant EEOC's partial motion for summary judgment as to this defense.

## IV. CONCLUSION

For the foregoing reasons, Magneti's Motion for Summary Judgment (Doc. No. 29) will be denied and the EEOC's Motion for Partial Summary Judgment (Doc. No. 26) will be granted as to Magneti's defense based on the conciliation effort.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE